[Civ. No. 1661.    Third Appellate District.—January 28, 1918.]

## J. B. PARKINSON, Respondent, v. C. H. LANGDON et al., Appellants.

LANDLORD AND TENANT—CONTRACT TO PLANT BEANS AND SHARE CROP—
  DAMAGES FOR BREACH.—In an action by a lessor of farm lands for
  damages for breach of contract of the lessees to plant the land to
  beans and share the crop, the measure of plaintiff's damages, under
  section 3300 of the Civil Code, is not the rental value of the land,
  but the loss of profits which would ordinarily and naturally in the
  usual course of things have been derived from defendant's perform-
  ance of the contract.

APPEAL from a judgment in the Superior Court of Sacramento County.    Charles O. Busick, Judge.

The facts are stated in the opinion of the court.

Elliot & Atkinson, for Appellants.

White, Miller, Needham & Harber, for Respondent.

CHIPMAN, P. J.—It is alleged in the complaint that on May 29, 1915, plaintiff and defendants entered into a contract of lease whereby defendants as tenants of plaintiff agreed among other things to cultivate and farm to beans for the proper cropping season of 1915, and in a good and farmer-like manner certain lands and, among others, a portion described as part of section 8, township 9 north, range 4 east, containing 40 acres, more or less, which was "to be staked out and designated by plaintiff as provided in said contract of lease." That plaintiff, shortly after the execution of said contract, "did stake off and designate the 40 acres of said section 8 to be included in and to be the 40 acres subject to said contract"; and that about May 29, 1915, plaintiff put defendants in possession of said 40-acre tract pursuant to said contract. That said 40 acres was fertile land capable of producing profitable crops of beans, and that "a good, abundant, and profitable crop of beans could have been easily grown and produced thereon during the cropping season of 1915, which season extends from about June 1st to September 25th of the year." That plaintiff has duly performed all the conditions and covenants undertaken by him to be performed. That about June 15, 1915, the said contract was by mutual consent of the parties thereto "modified so that it was understood and agreed that plaintiff's share of the bean crop for the season of 1915 to be grown and produced by defendants on said forty acres in said section 8 should be only forty-five per cent of the crop instead of fifty per cent, as specified in said original agreement, but said original agreement was not in any other respect changed or modified." It is then alleged that defendants did not plant said 40 acres of land, or attempt to plant upon the same any crop of beans or any crop whatever, "and did not at the proper season, or at any time, or at all, till and cultivate said land, or any part thereof, in a good and farmer-like manner, or in any manner whatever, or at all," and did not in any manner prepare said land for the planting and raising of a crop of beans, or any crop, during said season, and did not plant the said land to beans or to any crop whatever, but "allowed the proper time and season for the plowing of said ground and for the planting and sowing of a crop of beans thereon, and for the cultivation of said crop, to go by. And defendants wholly failed, neglected, and refused to

36 Cal. App.—6

cultivate said forty acres, or to raise, or attempt to raise and produce any crop whatever thereon.'' That had defendants ''at the proper time and in the proper manner prepared said land for the plaintiff of a crop thereon, and had sown and planted said 40 acres to beans, and had at the proper season and in a good and farmer-like manner tilled and cultivated said crop and otherwise performed the covenants and conditions of said contract to be performed by them, said 40 acres of land would have produced and yielded for the bean-cropping season of 1915, a large, abundant, profitable, bounteous and valuable crop, and that plaintiff's share thereof, pursuant to the terms of said contract, would have been no less than 450 sacks of beans of the value of $1,620, in which sum plaintiff has been damaged by defendants because of their failure to perform their contract aforesaid and by reason of their neglect, failure, and refusal to comply with the conditions thereof, and to plant, cultivate, grow and harvest a crop of beans on said 40 acres of land pursuant to the terms of said contract.''

Among the provisions of said contract of lease it was provided that the land was to be used for the purpose of raising a crop of beans thereon and for no other purpose unless agreed upon between the parties. That the defendants ''shall till and cultivate in a good and farmer-like manner, all of the said premises which are susceptible of profitable tillage and cultivation, and, in proper season, shall sow and plant the same in the crop above specified, and shall furnish the necessary seed therefor of clean and sound quality, and, in the proper season, shall harvest the said crop and immediately upon harvesting thereof shall deliver to the owner in the field, and without expense to the owner except that the owner shall provide sufficient sacks to contain his share of the crops, a full fifty hundredths (.50) share, quantity and quality considered, of all of the crop harvested on the aforesaid section 8.''

In their answer defendants admit the execution of the contract as alleged with its subsequent modification as alleged, but deny that the plaintiffs staked off the 40 acres as alleged in the complaint, and deny that it is rich and fertile land capable of profitable tillage and cultivation for the production of profitable or any crops of beans, and deny that a profitable crop of beans could have been easily or otherwise

grown on said land during the cropping season of 1915 or otherwise. Deny that plaintiff put the defendants in possession of the said lands. Admit as to said 40 acres the defendants did not plant or raise or grow or cultivate a crop of beans or any crops thereon during the cropping season of 1915, and allege that "without fault on their part, by reason of the overflowed and flooded condition of said land at all times during the proper season for the cultivation of the same in 1915, it was impossible to profitably or otherwise cultivate said 40 acres of land to beans or to put in or grow any crops thereon during the cropping season of 1915."

The cause was tried by the court without a jury. The court found, among other things: "That said 40 acres was and is land capable and susceptible of profitable tillage and cultivation, and capable of producing a profitable crop of beans, and that a profitable crop of beans could have been grown and produced thereon during the cropping season of 1915 by compliance with the terms of said lease; that plaintiff duly performed and complied with all the conditions and covenants of the said contract of lease on his part to be performed and complied with." That defendants did not, nor did either of them, plant or attempt to plant or grow or cultivate a crop of beans on said land during the season of 1915, and no crop was produced thereon during that season. "That plaintiff has not received, nor will he receive, any rental or rent whatever from said land for the bean-cropping season of 1915. The court further finds that if defendants had farmed in a good and farmer-like manner the land above described, and had sown and planted the said 40 acres to beans, and had at the proper time tilled and cultivated said crops, said 40 acres would have produced and yielded for the bean-cropping season of 1915 a profitable crop of beans," and that said land "would have produced a valuable and profitable crop of beans of an average yield of not less than ten 100-pound sacks per acre," and would have brought 3½ cents per pound delivered in the field, and the plaintiff's share thereof would have been $630 at the time for delivery thereof to plaintiff.

Judgment was entered accordingly in favor of plaintiff for the sum of $630 with interest and costs. Defendants appeal from the judgment and bring the record here under the alternative method.

Appellants challenge the sufficiency of the evidence to sustain the findings as to the quantity of beans the land would have produced had it been cultivated in accordance with the terms of said lease. Plaintiff's evidence consisted, in part, of the testimony of witnesses who were familiar with bean growing as a branch of farming and with this particular 40 acres of land; its adaptability to raising beans; its condition in respect of moisture and other factors affecting the practicability of planting beans in time to mature a crop during the season of 1915. They also testified that they were acquainted with the land immediately adjoining the land in question and in the immediate neighborhood of like quality surrounded with like conditions, and the yield of beans grown on such land with proper cultivation during the cropping season of 1915. They also testified to the quantity of beans the land in question would have produced in 1915 had it been properly prepared, planted to beans, and cared for in a farmer-like manner. So far as we can discover, the testimony went to every fact necessary to show that this 40-acre tract was good bean land; that it could have been planted to beans in time to have matured the crop and would have produced the quantity found by the court had defendants complied with the terms of their contract. It is true there was conflict in respect of some of the material facts, but the trial court resolved whatever doubt may have been created by such conflict, and with its decision on the facts we cannot interfere.

Appellants contend that the court adopted an erroneous measure of damages and should have limited the damage to the rental value of the land, thus presenting the pivotal question in the case.

Section 3300 of the Civil Code provides that "for the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." No hard-and-fast rule can be formulated by which it may be determined with invariable certainty to what cases or class of cases the code section applies, and under what circumstances it may be said that the detriment caused by the breach of a contract was "proximately

caused'' by the breach, or was of such a character as ''in the
ordinary course of things, would be likely to result there-
from.'' The application of the rule depends much upon the
facts in the given case.

In the case of *Friend & Terry L. Co.* v. *Miller,* 67 Cal.
464, [8 Pac. 40], plaintiff sued to recover for lumber sold
and delivered to defendant by plaintiff. Defendant intro-
duced evidence tending to show that he contracted with
plaintiff for certain piles and lumber to be used in pursuance
of a contract with the drainage commissioners, which he had
agreed to finish within a given time, all of which was known
to plaintiff, who agreed to furnish the same when required.
Defendant then offered to prove that plaintiff failed to fur-
nish the piles in time, whereby he was delayed in the com-
pletion of his contract and failed to realize the money
therefor, which he would otherwise have received from the
state through the drainage commission. Said the court:
''By the delay of the latter in delivering the piles defendant
suffered loss, was compelled to pay for the use of a pile-
driver, lost his time, and sustained other expenses, which he
proved, and as the verdict was for less by seven hundred
dollars than the amount claimed and proved by plaintiff,
we may reasonably infer defendant was allowed a deduction
on account of the damages thus sustained. He sought, but
was prevented from proving, the loss he sustained by failure
to collect the money due him from the state.'' The court
held that the failure of plaintiff to deliver the piles in time
was the *remote* cause of defendant's failure to receive pay-
ment from the state, and the reason for so holding was thus
stated: ''This is not a loss 'which in the ordinary course
of things would be likely to result' from a failure to deliver
under the contract. It was damages which could not well
have been contemplated by the parties when they entered
into the contract.'' But as to the other damages claimed,
the statute afforded a rule of compensation. In further ex-
planation, the court said: ''The failure of defendant to
secure compensation from the state was a result brought
about by the interposition of other agencies, dependent upon
independent causes over which plaintiff and defendant had
no control, and could not have contemplated. It was a loss
which . . . was too remote to have been contemplated.''
This decision had its counterpart, as was pointed out in the

opinion, in a case cited at section 254 of Field on Damages, where the contract was to furnish a threshing-machine to a farmer within three weeks, knowing it was needed at the time agreed, and after reasonable efforts to secure the crop, the plaintiff's wheat was injured by the necessary delay in saving it and in consequence of a rain; the farmer sustained further damage from a fall in the market price of wheat before it could be kiln-dried and got ready for sale. He was held entitled to recover the loss by the injury to the wheat, but not to the change in the market, as the former might well have been in the contemplation of the parties, but not the latter.

The rule is thus stated in 8 Ruling Case Law, 505: "As in the case of damages for breach of contract generally, a recovery may be had for loss of profits when, and only when, the loss is such as might naturally be expected to follow the breach. Profits which would ordinarily, naturally, and in the usual course of things have been derived from performance, and the loss of which flows directly and naturally from the breach of the contract itself, may be recovered, since they are naturally incident to the contract, and may be fairly supposed to have been within the contemplation of the parties when it was made." The line of distinction between profits which are remote, consequential, or not within the contemplation of the parties, and those which are proximate and absolute and certain, and within the contemplation of the parties, "seems to rest in the question whether they are to arise directly out of the contract in question or its subject matter, and to constitute the immediate fruits of the contract, or whether they are to result from collateral engagements or enterprises. Where the profit to be made was the inducement to the contract, such profit is the measure of damages. So a recovery may be had for the loss of profits which are the direct and immediate fruits of the contract itself. Such profits are not to be regarded as consequential, remote, or speculative in character, but are regarded as part and parcel of the contract itself, entering into and constituting a portion of its very elements, something stipulated for, and the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation." (Id.) The foregoing is about as satisfactory an explanation of the philosophy of the rule as we can find in the books and, it

seems to us, furnishes a safe guide to a solution of the question here. The contract plainly shows that the land was to be planted to a specific crop and none other. Both parties understood this and contracted with reference to that understanding. Plaintiff's compensation was to be measured by an agreed per centum of this specific crop and not otherwise. Given land suitable for growing beans; condition of soil, climate, moisture, etc., favorable to the production of a profitable crop, and nothing supervening to prevent such result except the failure of the contracting party to do what his contract required of him, it seems to us, we have a clear case where the loss to the lessor ''is such as might naturally be expected to follow from the breach,'' and that he would be entitled to the ''profits which would ordinarily and naturally, and in the usual course of things have been derived from performance,'' and furnishes an instance where ''the loss flows directly and naturally from the breach of the contract itself'' and is recoverable, since the loss is ''naturally incident to the contract and may be fairly supposed to have been within the contemplation of the parties when it was made.''

In *Rice* v. *Whitmore,* 74 Cal. 619, [5 Am. St. Rep. 479, 16 Pac. 501], defendant had leased certain land to plaintiff on which the latter was to sow grain, paying one-fourth of the grain raised as rental. Defendant failed to give plaintiff possession of the land and plaintiff recovered the value of a crop that might have been raised on the land by an average farmer during the term, less the cost of raising it. In the case of *Allen* v. *Los Molinos Water Co.,* 25 Cal. App. 208, [143 Pac. 253], defendant was under contract to furnish plaintiff water for irrigating his crop of potatoes. Defendant failed to keep its contract and plaintiff lost his crop. It was held that under section 3300 of the Civil Code, the measure of damages was the market value of the potatoes, at the selling place, which would have been produced had defendant kept its contract, less the expense of growing and marketing the crop. Similarly held in a similar case— *Chambers* v. *Belmore Land & Water Co.,* 33 Cal. App. 78, [164 Pac. 404], applying the rule as stated in *Teller* v. *Bay,* 151 Cal. 209, [12 Ann. Cas. 779, 12 L. R. A. (N. S.) 267, 90 Pac. 942]. A somewhat analogous case is *Holt Mfg. Co.* v. *Thornton,* 136 Cal. 232, [68 Pac. 708]. There the con-

tract was to commence harvesting the wheat on the 5th of July, whereas the plaintiff did not begin the work until the 15th. Plaintiff sued for services and defendant counterclaimed that by reason of plaintiff's delay in commencing the work the wheat was shelled out and lost to defendant. Plaintiff claimed that the loss was too remote and speculative to be considered as the result of its breach. It was held otherwise. Said the court: "This loss was not speculative or remote; and although it was, no doubt, somewhat difficult to fix the amount of the loss with great accuracy, still there was ample evidence to show an amount of damage exceeding that found by the jury. It has often been held that damages may be recovered for the destruction of merely immature growing crops although there was no absolute certainty that they would ever mature; for 'he who breaks the contract cannot wholly escape on account of the difficulty which his own wrong has produced of devising a perfect measure of damages.'" Citing *Shoemaker* v. *Acker,* 116 Cal. 239,. [48 Pac. 62].

Error is alleged in refusing to allow defendants to show in the cross-examination of plaintiff, when called as a witness, that plaintiff was a subtenant of the owner of the land and was released by his lessor from payment of rent. The relation of plaintiff to his lessor was immaterial. (*Holt Mfg. Co.* v. *Thornton, supra.*)

The judgment is affirmed.

Burnett, J., and Hart, J., concurred.