[Civ. No. 2426.   Third Appellate District.—April 18, 1922.]

## ROACH BROTHERS AND COMPANY (a Corporation), Respondent, v. LACTEIN FOOD COMPANY (a Corporation), Appellant.

[1] CONTRACTS — BREACH—ACTION FOR DAMAGES—PLEADING—AMENDMENT OF COMPLAINT.—Where it would have been perfectly proper and competent or within the issues to have proved all the terms of the contract under the general issue as framed by the pleadings as originally filed, the filing of an amendment to the complaint based upon said contract, but which contained averments more elaborately explaining the terms of said contract, did not constitute the statement of a new and different cause of action.

[2] ID.—INCREASE OF DAMAGES — AMENDMENT OF PRAYER.—A party suing for damages for a tort may amend his complaint so as to authorize a judgment for a larger amount of damages for such tort than that which was asked for in the complaint as originally filed.

[3] ID.—TIME OF DELIVERY — CONSTRUCTION OF CONTRACT.—Where a contract by a manufacturer for the sale and delivery of its surplus of a given commodity for one year does not definitely fix the time of delivery, a fair and reasonable construction of such contract is that said manufacturer shall furnish such commodity to the purchaser whenever the latter shall demand it, provided, of course, that said manufacturer has on hand such a supply as the purchaser requires or calls for.

[4] ID.—REFUSAL TO SUPPLY COMMODITY—REPUDIATION OF CONTRACT IN TOTO—FINDING.—The manufacturer, after refusing to supply the purchaser on its second order, having notified the purchaser by letter that it would be impossible to allow the latter any more of the commodity, as per their contract, the trial court, in an action

for the breach of said contract, was justified in construing that letter as a repudiation *in toto* of the contract and finding accordingly.

[5] ID.—BREACH OF CONTRACT TO SUPPLY GOODS—MEASURE OF DAMAGES.—In an action by the purchaser for the breach of a contract for the purchase and sale of a given commodity, if there is nothing in the contract as pleaded to indicate that the matter of profits to be derived by the plaintiff from the resale of the goods entered into the agreement as a consideration or as an element thereof and the pleadings do not show that plaintiff could not go into the open market and supply himself with the same commodity, the measure of damages is that prescribed by sections 3308 and 3354 of the Civil Code, and not the profits which plaintiff would probably have derived from the commodity had the same been supplied to it by defendant.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge. Reversed.

The facts are stated in the opinion of the court.

Dennett & Zion and H. A. Stout for Appellant.

E. B. Mering, M. J. Gillespie and T. B. Scott for Respondent.

HART, J.—This is an action for damages for the breach of a certain contract, alleged to have been entered into between the plaintiff and the defendant.

The defendant was, for a long time prior to and at the time of the making of the contract declared upon in the complaint, engaged in the business of manufacturing condensed buttermilk, known as "Lactein," or "Hen and Hog Buttermilk," in the city of Modesto, Stanislaus County. It was alleged in the complaint as originally filed that, on the thirtieth day of April, 1919, said plaintiff and said defendant entered into an agreement which was to continue one year from said date and whereby the defendant granted to said plaintiff the exclusive option to purchase all the surplus "Hen and Hog Buttermilk" in certain designated amounts and sizes and for certain prices. It was alleged in said complaint that said agreement was in writing and was duly executed and delivered by said parties; that thereafter, pursuant to said agreement, the defendant delivered to the plaintiff one carload of said Lactein and that plaintiff accepted

and paid for the same; that thereafter plaintiff demanded that said defendant deliver said Lactein according to the terms of said agreement, but that defendant refused to deliver said Lactein and "further refused to be bound by said agreement, and all without just cause or reason." There was no direct allegation in the complaint, in its original draft, stating the number of carloads of said Lactein with which the defendant agreed to supply the plaintiff, notwithstanding which omission said complaint further alleged that "had said defendant delivered said nineteen carloads of said Lactein or Hen and Hog Buttermilk, the value of said Lactein or Hen and Hog Buttermilk to the plaintiff herein would have been $27,360; that by reason of said refusal of said defendant to carry out said contract said plaintiff has been damaged in the sum of $4,408, the excess of said value over said purchase price," for which sum judgment is prayed. The defendant, answering the complaint and after certain formal denials, admitted that the contract referred to in the complaint was entered into between the parties on the day therein named and that under said contract the defendant was to furnish said plaintiff for a period of one year from the date of said agreement Hen and Hog Buttermilk, at the prices set forth in the complaint, on the condition, however, that said defendant had the product on hand to sell to the said plaintiff; admitted delivering one carload of Hen and Hog Buttermilk to the plaintiff and that the plaintiff accepted and paid for the same; admitted that the plaintiff demanded another carload of Hen and Hog Buttermilk, but denied that plaintiff demanded any Lactein and admitted that defendant refused to deliver said material, giving as the reason therefor that the plaintiff violated the terms of the contract and so surrendered its rights under the same, as follows: That among the terms of said agreement the retail price thereof was to be $15.10 for 52-gallon barrels, but that plaintiff sold said material at prices lower than the prices so agreed upon and that it did "actually sell one carload of said Hen and Hog Buttermilk at a price so far below the prices set forth in said contract that the defendant could not deliver the same without great loss"; that said agreement provided that said plaintiff was not to sell or deliver said material to any person or firm purchasing Lactein from the said defendant, but "after the delivery of

said carload said defendant sold a carload of said Hen and Hog Buttermilk to the agent [of defendant] for the sale of Lactein in the County of Sacramento, State of California,'' in violation of the terms of said agreement. Plaintiff later filed an amendment to the complaint, alleging among other things, that the defendant was organized as a corporation on the first day of March, 1918, by M. P. Long, E. H. Zion, and J. R. Gilbert; that the capital stock of said corporation was 2,500 shares of the par value of $10 each; that 2,410 shares of said stock were issued, of which 1,007 were issued to J. R. Gilbert; that said Gilbert on the day of the organization of said corporation sold and transferred to certain persons in Modesto 407 shares of said stock at the price of $10 per share; that at all times herein mentioned the market value of said stock was $10 per share; that said Lactein Company on the thirtieth day of April, 1919, had on hand a surplus of about 600 barrels of Lactein or Hen and Hog Buttermilk, ''and were then accumulating said Lactein at the rate of 250 barrels per month, all of which they were unable to dispose of''; that on said date W. B. Gilbert was the president of the plaintiff and that ''said defendant was anxious to secure the assistance of said plaintiff to dispose of said surplus Lactein and said plaintiff was desirous of securing a contract with said defendant for the sale of said Lactein.'' It was then alleged that the parties on the thirtieth day of April, 1919, entered into a verbal contract whereby the defendant granted to plaintiff an exclusive option to purchase all the surplus Hen and Hog Buttermilk for the prices and on the terms stated in the complaint as originally drawn. It further alleged in said amendment that plaintiff ''has drawn up and annexed hereto marked 'Exhibit A' the verbal contract as made by the parties and as intended by the parties. The same is made a part hereof.'' It was alleged that the prices designated were to be for carload lots of 30,000 pounds minimum capacity and the purchase price was to be paid in cash within ten days of date of shipment, less two per cent discount for cash; that defendant further ''agreed to secure the entire present output of buttermilk and other milk products of the Newman Creamery and convert the same into Hen and Hog Buttermilk and hold the same subject to the above option''; that it was expressly understood and agreed and a part of

the consideration of the agreement that "said defendant should purchase and pay for at least twenty carloads of said product during the first year, and that all the covenants and provisions therein contained were mutual and the promises and agreements of the one party are in consideration of the promises and agreements of the other party herein." It was further alleged that at the time of the making of said contract "L. L. Dennett was the regular counsel of the defendants and was in their employ; that at said time said L. L. Dennett was not the counsel for the plaintiff herein and was not in its employ; that in the making of said contract W. B. Gilbert acted as representative of the plaintiff; that said L. L. Dennett was not in the employ of W. B. Gilbert nor was he his counsel; that it was mutually agreed between the parties that said L. L. Dennett should reduce said contract to writing; that thereafter said L. L. Dennett drew up an agreement which was executed by the plaintiff and the defendant; that a copy of said agreement is hereto annexed marked 'Exhibit B' and is made a part of the amendment to the complaint." It was further alleged that plaintiff agreed to procure for said defendant the 600 shares of stock of the Lactein Food Company then held by said J. R. Gilbert and cause the same to be sold and transferred to said defendant for the sum of $3,500. It was also alleged that the Hen and Hog Buttermilk to be furnished by the plaintiff to the defendant should be equal in every respect to the product then and thereafter made by said defendant and sold under the trade name of "Lactein," and also that said product should be sold by said plaintiff under the name of "Hen and Hog Buttermilk" and that the business was to be carried on by plaintiff with buyers under the name of "Dairy Products Company." It was alleged that said contract executed by the parties failed to express the actual agreement of the parties in the following particulars: First, it fails to set forth the surplus milk that plaintiff was to receive; second, it fails to grant unto plaintiff the option to purchase any milk; third, it fails to mention the covenant of the defendant to secure the milk from the Newman Creamery and subject the same to the option of the plaintiff; fourth, it fails to set forth the covenant of the plaintiff to secure for the defendant the stock in the Lactein Food Company. The allegations in the complaint as originally drafted

to the effect that the defendant, in pursuance of said contract, delivered to plaintiff and plaintiff accepted and paid for one carload of Lactein and that on or about the twelfth day of May, 1919, plaintiff demanded one carload of said Lactein and that defendant refused to deliver the same and "then and there gave notice that it would not perform said contract nor be bound by the same," were repeated in the amendment to the complaint. It is alleged that plaintiff "has at all times been ready, willing and able to accept and pay for said Lactein according to the terms of said contract." It is further alleged (paragraph 10) that "pursuant to the terms of said verbal contract, this plaintiff did, on or about the 30th day of April, 1919, cause to be transferred to defendant said 600 shares of stock in said defendant company and said company paid therefor said $3,500, according to the terms of said verbal contract." The prayer of the complaint as amended prays for "judgment of the court that said contract be reformed so as to conform to the form attached to this amendment to the complaint, and for such and other further relief as, considering the premises, is meet and proper, and for costs."

A second amendment to the complaint was filed in which it was alleged, among other things, after formally realleging paragraphs 1, 2, 3, 4, 5, 9, and 10 of the amendment to the complaint: "Par. 3. That the average carload according to said contract and as demanded by the market was made up as follows: 80 52-gallon barrels or not less than 40 52-gallon barrels, 20 25-gallon barrels, 30 10-gallon barrels and 50 5-gallon barrels; that under the terms of said contract said defendant could have produced for this plaintiff 100 carloads of the above average of Lactein during said first year of said contract and plaintiff could have disposed of the whole thereof; that according to the terms of said contract, the amount that would have been due and payable to defendant for said 100 carloads of Lactein would have been $120,800; that the value of said 100 carloads of Lactein to this plaintiff would have been $144,000; Par. 4. That by reason of said refusal of said defendant to carry out said contract said plaintiff has been damaged in the sum of $23,200, the excess of said value over said purchase price." Judgment is asked for the last stated amount. The defendant demurred to the amendment and second amendment to the complaint and

moved to strike out certain averments contained therein, the demurrers being overruled and the motions denied. Thereupon it answered the allegations of said amendments, embodying in the answer denials and admissions contained in the answer to the complaint as originally filed and meeting such other new matter as the second amendment to the complaint contained either by way of denial, admission, or special defense.

We have presented above an extended statement of the averments of the several pleadings filed by the plaintiff for two particular reasons, to wit, first, because therein the terms of the contract, for the breach of which the plaintiff brought this action, are quite fully stated, thereby making it unnecessary to reproduce the contract itself herein; and, second, because it is claimed, as we shall later see, that the effect of the amendments to the complaint was to state a new and different cause of action, based upon an entirely different contract from that pleaded in the complaint as originally filed.

The court, among other things, found that paragraph 5 of the amendment to the complaint does not express the terms of the agreement, but that the terms of the agreement as actually made by the parties are set forth in the contract designated as "Exhibit B" and made a part of the amendment to the complaint; that if the defendant had delivered nineteen carloads as provided by the terms of said contract there would have been due and unpaid the defendant the sum of $18,401.50; that the value of said nineteen carloads of Lactein to the plaintiff would have been $22,201.50; that by the refusal of defendant to deliver said nineteen carloads of Lactein plaintiff has been damaged in the sum of $3,800; that the allegations of paragraph 7 of the amendment to the complaint, to the effect that the contract executed by the parties fails to express their actual agreement in the particulars above indicated, are untrue; that paragraph 8 alleging certain prices which the plaintiff agreed to pay per barrel for said Lactein, the cost of Lactein to the defendant, the net profit to the defendant by the sale of the Lactein to the plaintiff under the contract and that "the surplus of the Modesto plant was 250 barrels per month and the production in addition to this surplus after the contract with the Newman Creamery Company was

made would give an additional surplus of 600 barrels per month,'' is untrue; that paragraph 10 of the answer to the complaint as originally filed alleging that the refusal of defendant to deliver said material to said plaintiff was due to certain breaches of the contract by the plaintiff, is untrue. As to the second amendment to the complaint the court finds that the allegation of paragraph 2 to the effect that ''by the judgment of this court in the amendment to the complaint in this action, said court has reformed said contract and declared the contract set forth herein to be the reformed contract of the said parties'' is untrue; that paragraphs 3 and 4 are true. As conclusions of law the court declared that the written contract annexed to the complaint and marked ''Exhibit B'' ''is the true contract executed by the parties; that by said contract the plaintiff was bound to receive 20 carloads of Hen and Hog Buttermilk and also the defendant was bound to furnish the same; that defendant furnished one car and refused to furnish more and that by reason of said refusal plaintiff has been damaged in the sum of $3,800.''

Judgment was entered accordingly and from said judgment the defendant prosecutes this appeal, supporting the same by a record prepared according to the alternative method.

The defendant urges six specific and different points, any one of which, it is claimed, will, if found tenable, require a reversal of the judgment.

Our conclusion is that the judgment must be reversed for the reason that the court, as a basis for the relief awarded the plaintiff for the alleged breach of the contract, adopted an erroneous measure of damages. We are, though, of the opinion that the other points, in so far as they may be regarded as affecting or impairing the validity of the judgment, are devoid of substantial merit; yet, in view of a new trial, we think that two of these should be briefly noticed herein, viz.: First, that a new and different cause of action from that stated in the complaint as originally filed is set up in the amendments to the complaint; second, that there was no breach of the agreement, for the reason that, as is the claim, there was no time specified at which the material should be furnished to plaintiff, and that, therefore, it was within the discretion of the defendant to furnish the material at any time during the year that the contract was to exist.

[1] 1. The cause of action stated in the original complaint was based upon a breach of a contract whereby the defendant agreed to sell to the plaintiff and the plaintiff agreed to purchase from the defendant a certain amount of Hen and Hog Buttermilk during the year commencing with the thirtieth day of April, 1919, at certain specified prices. The amendments to the complaint were based upon said contract, although the averments thereof more elaborately explain the terms of the convention. This, however, did not have the effect of changing the cause of action or of introducing issues into the case which were not there by virtue of the complaint as originally filed. It is true that the amendments to the complaint specifically referred to matters involved in the contract which were not so referred to in the original complaint. But it would have been perfectly proper and competent or within the issues to have proved all the terms of the contract, under the general issue as framed by the pleadings as originally filed, and this would, of course, have included the additional averments set forth in the amendment to the complaint as to the terms of the contract. The amendments to the complaint, as we have seen, set out in substance the terms of the contract as found by the court and admitted by the defendant to have been the contract which was entered into between it and the plaintiff. [2] It is, however, true that the averments of the second amended complaint call and the prayer prays for a larger amount of damages than was asked for in the latter pleading. We do not know of any rule of law or any reason against the right of a party suing for damages for any tort to amend his complaint so as to authorize a judgment for a larger amount of damages for such tort than that which was asked for in the complaint as originally filed, if the evidence warranted it. Moreover, it is obvious that the defendant was not prejudiced by a demand for a larger amount of damages than that asked for in the complaint as originally filed, even if the allowance of said amendment so far as it concerned the amount of damages might be said to involve error, since the amount of damages awarded by the court was far below the sum prayed for in the amendments and even below the amount asked in the

original complaint. (*Stohlman* v. *Martin*, 28 Cal. App. 338, 347 [152 Pac. 319].)

[3] 2. There is nothing in the point that there was no breach of the contract because, as appellant contends, it had an entire year within which to perform, or at the very least a reasonable time to perform after demand. The contract is for the sale and purchase of a commercial commodity and a fair and reasonable construction thereof is that the defendant was to furnish the Lactein to the plaintiff whenever the latter should demand it, provided, of course, that the defendant had on hand such a supply of the article as the plaintiff might require or call for. In other words, we do not think that the defendant was at liberty under the contract to refuse to supply the plaintiff with Lactein in the required quantity at any reasonable time at which the former might demand it. [4] In this connection, it is further contended that if the defendant was in default at all it was merely for its refusal to supply the plaintiff on its second demand or order for Lactein. The record does not support this contention. To the contrary, it appears from the evidence that the defendant, through its general manager and president, addressed a letter, under date of July 7, 1919, to the plaintiff or its agent, Mr. Gilbert, stating, among other things: "It will be impossible for us to allow you to sell H and H [Hen and Hog Buttermilk] in this territory, as per our first contract; we wish to state that we will make a contract with you turning over the State of Arizona to you and allowing you a commission on any H and H sold in this territory, although we intend, if possible, to discontinue the sale of H and H entirely." This letter, it will be observed, was after the plaintiff had made its second demand upon the defendant for Lactein. The trial court construed it to be a repudiation *in toto* of the contract and so found and we think the letter sufficiently supports the court's finding in that particular.

[5] We now return to the proposition that the court erred, to the prejudice of the defendant, in adopting as the measure of damages in this case the profits which the plaintiff would probably have derived from the material mentioned in the contract had the same been supplied to it by the defendant according to the terms of the agreement.

(Sec. 3300, Civ. Code.)   Said section provides: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things, would be likely to result therefrom."

We are persuaded that the measure of damages in this case, as the record stands before us, is that prescribed by sections 3308 and 3354 of the Civil Code.   The first-named section reads: "The detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer, over the amount which would have been due to the seller under the contract, if it had been fulfilled."   Section 3354 provides: "In estimating damages, except as provided by sections three thousand three hundred and fifty-five and three thousand three hundred and fifty-six, the value of property, to a buyer or owner thereof, deprived of its possession, is deemed to be the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice, with reasonable diligence, for him to make such a purchase."

The terms of the contract which the court found that the parties actually entered into are substantially set forth in the amendment to the complaint, the averments of which are in substance reproduced hereinabove.   The specific provisions of the contract are that the party of the first part "is the manufacturer of a condensed buttermilk known as Lactein or Hen and Hog Buttermilk . . . and desires to sell said product and said party of the second part desires to purchase said product under the terms and conditions hereinafter specified; that it is agreed by and between the parties hereto in consideration of the conditions and covenants and of the payment of one dollar each to the other, receipt whereof is hereby acknowledged, that the said party of the first part will sell to the said party of the second part" the article mentioned at the prices specified; that

"the purchase price is to be paid in cash within ten days from date of shipment, less two per cent discount for cash." Thus it will be seen that the contract is plainly one for the sale and purchase of the article therein referred to. There is nothing in the contract to indicate that the matter of profits to be derived by the plaintiff from the sale of the article entered into the agreement as a consideration or as an element thereof.

There are cases of contracts for the sale and purchase of certain commodities in which the measure of damages adopted by the court in this case would be applicable. These are where the circumstances are such that the vendee cannot go into the open market and supply himself with the same article, in which case the loss of profits would be a just element in the admeasurement of damages. (*McKay* v. *Riley*, 65 Cal. 623 [4 Pac. 667]; *National etc. Mfg. Co.* v. *Producers R. Co.*, 169 Cal. 740, 745 [147 Pac. 963], and cases therein cited.) The case of *Parkinson* v. *Langdon*, 36 Cal. App. 80 [171 Pac. 710], like the cases just cited, is one in which profits entered into the contract as a part of the consideration therefor. There is no allegation in any of the pleadings filed by the plaintiff that the latter, after the breach, was unable to purchase Hen and Hog Buttermilk in the open market; nor, so far as we are advised by the record, is there any evidence therein tending to show that Hen and Hog Buttermilk, such as was manufactured by the defendant, could not be purchased in the open market. The only testimony upon the question of damages was that given by W. B. Gilbert, who testified as to the amount of profits lost by the plaintiff by reason of the failure of the defendant to supply the former with the article according to the terms of the agreement. This is the only testimony to which counsel for the plaintiff refers in support of his contention that the amount of damages found by the court as having been suffered by the plaintiff for the breach of the contract is sufficiently buttressed, evidentially, and from this we have the right to conclude that there is no other testimony in the case upon the question of damages. The finding of the court upon the question of damages is in accord with this testimony and is based thereon. This testimony was, under the circumstances of this case as disclosed by the record, clearly in-

competent, from which proposition it necessarily follows that there is in the record no basis for a proper or legal admeasurement of damages in this case.

The judgment is reversed and the cause remanded.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 15, 1922.

All the Justices concurred, except Shurtleff, J., and Waste, J., who were absent.