BERCUT et al. v. PARK, BENZIGER & CO., Inc.

PARK, BENZIGER & CO., Inc. v. BERCUT et al.

No. 10823.

Circuit Court of Appeals, Ninth Circuit.

July 18, 1945.

Rehearing Denied Aug. 29, 1945.

732

Alfred F. Breslauer, M. Mitchell Bourquin, and George Olshausen, all of San Francisco, Cal., and Thelma S. Herzig, of Los Angeles, Cal., for plaintiff.

George M. Naus and Louis H. Brownstone, both of San Francisco, Cal., for defendants.

Before DENMAN, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

In January 1943 Pierre and Jean Bercut (appellants) contracted to sell to one Serge Hermann 60,000 cases of wine, deliveries to be made at monthly intervals over a period of three years. The contract was made and was to be performed in California. Hermann assigned the contract to appellee Park, Benziger & Company, herein for brevity sometimes called the buyer. In April 1943, before deliveries commenced, the Bercuts announced that they would make no deliveries. The buyer, electing to treat the announcement as an anticipatory breach, brought suit and was awarded damages in the sum of $72,687.51.[1] Both parties have appealed; but it will be unnecessary to consider the buyer's appeal since its submission was conditioned on our failure to affirm the judgment.

1. The evidence was that other wines of the type contracted for were not available on the market. The court submitted the case to the jury on the principle that the buyer was entitled to recover prospective net profits which it would have made in the ordinary course of business had not the sellers breached the contract.[2] The Bercuts claim that prospective profits are not recoverable unless it is shown that at

---

[1] There were two trials, on the first of which the jury awarded damages in a larger amount. On the second trial the court limited recovery to damages for failure to deliver quantities for which specific prices had been fixed.

[2] The proof did not relate to loss of profits on a particular forward contract or contracts of resale, but generally to prices for which the wines could have been disposed of on the existing market.

the time the contract was made the seller knew the goods were unobtainable elsewhere.[3] They moved for a directed verdict on the ground that there was no showing of knowledge, and they unavailingly requested an instruction embodying their theory that such profits constitute special damages.

Subdivision (2) of § 1787 of the California Civil Code, Uniform Sales Act § 67 (2), provides that the measure of damages in case of wrongful refusal to deliver goods "is the loss directly and naturally resulting in the ordinary course of events, from the seller's breach of contract."[4] There is support for the view that this subdivision furnishes the applicable rule where there is no market from which the buyer can supply himself. See 1 U.L.A. p. 376, annotation b. A late California decision dealing with the measure of recovery in such situation is Coates v. Lake View Oil & Refining Co., 20 Cal.App.2d 113, 66 P.2d 463, where lost net profits were held recoverable. The court quoted and approved the rule of McKay v. Riley, 65 Cal. 623, 4 P. 667, 668, to the following effect: "'Ordinarily, the rule of damages, in actions like the present, is the difference between the price agreed to be paid and the market value, because the vendee can obtain the article contracted for at the market price. When, however, the circumstances are such that the vendee cannot thus supply himself, the rule does not apply, for the reason [for] it ceases. * * * In such case the true measure of damages is the actual loss sustained by the vendee by reason of his not receiving an advance or profit through agreements which he himself has made in reliance upon the fulfillment of his vendor's contract.'"[5]

In these California decisions the buyer's loss of profits appears to be regarded as the direct and natural conseqence following in the ordinary course of events from the seller's failure to deliver. None of the cited cases intimates that unavailability of the goods on the market is a special circumstance of which the seller must be shown to have had knowledge. The New York Court of Appeals has expressly held that such damages are not special, but are general damages, Orester v. Dayton Rubber Mfg. Co., 228 N.Y. 134, 126 N.E. 510; and there are a number of other respectable authorities, which, without discussion of the point, proceed on the same assumption.[6] We conclude that on this phase of the case the court was not in error.

2. Damages will not be awarded for loss of profits unless there is a satisfactory basis for estimating what the probable earnings would have been had there been no tort or breach of contract. Natural Soda Products Co. v. City of Los Angeles, 23 Cal.2d 193, 143 P.2d 12. Anticipated profits need not, however, be established with certainty; it is enough that the loss be shown as a reasonable probability. Hacker Pipe & Supply Co. v. Chapman Valve Mfg. Co., 17 Cal.App.2d 265, 267, 61 P.2d 944.

We think the evidence on the part of the buyer satisfied these requirements; and we disagree with appellants' contention that the proof was of gross instead of net profits.[7] Competent evidence was introduced of the prices at which the buyer would have been able to sell the wines had they been delivered. There was evidence of general

---

[3] Williston on Contracts (7th ed.), § 1347, supports this view but cites no authority for it.

[4] "§ 1787. Action for failing to deliver goods. (1) Where the property in the goods has not passed to the buyer, and the seller wrongfully neglects or refuses to deliver the goods, the buyer may maintain an action against the seller for damages for nondelivery.

"(2) The measure of damages is the loss directly and naturally resulting in the ordinary course of events, from the seller's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the contract price and the market or current price of the goods at the time or times when they ought to have been delivered, or, if no time was fixed, then at the time of the refusal to deliver. [Added by Stats.1931, p. 2255.]"

[5] Cf., also, Sobelman v. Maier, 203 Cal. 1, 262 P. 1087; West Coast Winery v. Golden West Wineries, Cal.App.2d 158 P.2d 623; Roach Bros. & Co. v. Lactein Food Co., 57 Cal.App. 379, 207 P. 419; Western Industries Co. v. Mason Malt Whiskey Distilling Co., 56 Cal.App. 355, 205 P. 466.

[6] Cf. Flores v. Basso, 1925, 229 Mich. 577, 201 N.W. 875; Acunto v. Schmidt-Dauber Co., Inc., 1923, 207 App.Div. 411, 202 N.Y.S. 1; Black Diamond Fuel Co. v. Illinois Fuel, etc., Co., 1920, 219 Ill. App. 150.

[7] Cf. Coates v. Lake View Oil, etc., Co. supra; West Coast Winery v. Golden West Wineries, supra.

overhead costs, cost of freight, insurance and warehousing. There was, in short, sufficient proof of the buyer's probable gross profits, and of the expenses which would have been incurred. From the data given, the jury was in position fairly to determine the buyer's damage. In answering objections similar to those urged by appellants the court in Natural Soda Products Co. v. Los Angeles, supra, 23 Cal.2d at page 200, 143 P.2d at page 17, observed: "Since defendant made it impossible for plaintiff to realize any profits, it cannot complain if the probable profits are of necessity estimated."

3. It is claimed that the court erred in failing to instruct the jury as a matter of law that under OPA price ceilings the maximum markup permitted the buyer was 25%. The argument, as we understand it, is that loss of profits may not be considered as an element of damage where the profits could not legally have been earned.

■ There are several reasons why the specification of error is unavailing, one of which would normally halt inquiry at the threshold. There was no timely request for an instruction of the character discussed nor timely objection to the court's omission so to advise the jury. Under Rule 51 of the Federal Rules, 28 U.S.C.A. following section 723c, a party may not assign as error the failure to give an instruction unless he specifically calls the court's attention thereto before the jury retires. Appellants can plead no valid excuse for their neglect timely to raise the point. As already noted, the case was twice tried. Counsel for appellants had knowledge of the regulation and they were from the outset abundantly familiar with the evidence in support of the buyer's claim of loss.

■ The effective date of the regulation in question (MPR 445, § 5.10) was August 31, 1943. On the evidence it was not a pure question of law, but a contested question of fact, whether the buyer was within its terms. Moreover, appellants had insisted, and the court appears to have agreed with them, that damages must be proved exclusively from data available as of the date of the breach, namely April 27, 1943, all subsequent events or developments being excluded as irrelevant. Having insisted upon a trial on this theory appellants are hardly in position to complain of the court's neglect of the regulation.

■ Finally, the breach occurred four months prior to the inauguration of the regulation. While the agreement was for delivery in installments, the buyer might in the interim have disposed of its interest in the contract. Moreover, from evidence concerning the current condition of the wine market it was inferable that the buyer could readily have resold the wines for future delivery on forward contracts, even on the basis of sales for cash. In sum the situation was such that profits in excess of the ceiling later established might lawfully have been realized.

■ 4. The agreement between the plaintiff and its assignor, Hermann, provided that Hermann was to be paid "a commission equal to 50% of the net profits" derived from the sale of the wines. In arguing the question of damages appellants contend that the commission should have been deducted in arriving at the net profits recoverable. The agreement, however, plainly assumes that net profits have been determined before the deduction of the fifty per cent, that is to say, the effect of the arrangement was that plaintiff and Hermann were to split the net profits equally.

The point was adequately dealt with in the comparable case of Russ v. Tuttle, 158 Cal. 226, 110 P. 813, 814, where it was shown that the plaintiff, Russ, after taking an option, had assigned the whole or a part of it to one Buhne. It was claimed by the defendant that the damage recoverable should be less because of the assignment. The court pointed out, however, that the damage was recoverable by the party maintaining the suit. "Whether," said the court, "the plaintiff after recovery would be bound to account to Buhne for a part or all of the amount received by him was a question between him and Buhne. The defendant was in no way concerned in it." It was thought that the point urged did not at all bear on the measure of damages, but only on the question whether the plaintiff was the real or sole party in interest. As to the latter problem the court concluded that so far as the defendant was concerned, "the question of who is the real party in interest as between Russ and Buhne is immaterial."

Here, as in Russ v. Tuttle, supra, the defense that the plaintiff was not the real or sole party in interest was not raised by the pleadings. Hermann participated in the trial of the case, and no objection on the score of his not being joined as a plaintiff was interposed. We are satisfied

that the judgment protects appellants against any claim by Hermann.[8]

5. Other points are urged which appear to be little more than makeweights. One relates to the claim that plaintiff is a dummy corporation. As to this there was no proof of insolvency or other circumstance which might justify appellants' refusal to perform. 3 Williston on Contracts (Rev. Ed.) § 880, p. 2475. Again, it is claimed that the court erred in failing to instruct the jury concerning the burden of proof on the issue of damages. Appellants did not, however, object to the omission, and in any event we are satisfied that they suffered no prejudice.

The case was carefully and fairly tried and we see no good reason for upsetting the result.

Affirmed.

[8] Compare further on the problem as to what constitutes net profits, Swerdfeger v. United Acceptance Corporation, 9 Cal.App.2d 590, 50 P.2d 88.