# Pugh v. Jackson, Jr.

(Decided June 20, 1913).

## Appeal from Laurel Circuit Court.

1. Contracts—Damages—Pleading.—Where plaintiff leased a coal mine from a company of which defendant was president, and defendant agreed with plaintiff to make his pay rolls at the end of each week, and plaintiff seeks damages for a breach of the contract by defendant, a petition which sets forth the terms of the agreement, the consideration, the violation of the agreement by defendant, the fact that plaintiff could and would have mined the coal at a profit, and that he was damaged by defendant's breach of the contract in the sum of $1,260, is sufficient.

2. Contracts—Validity.—Where plaintiff leases a mine from a company of which defendant is president, and agrees with plaintiff to make his weekly pay rolls until all the coal is mined, the contract is not void for indefiniteness.

3. Contracts—Consideration.—Where plaintiff has leased a mine from a company of which defendant is president, and the defendant is to make plaintiff's weekly pay rolls in consideration of a commission of 5 cents per ton for selling the coal, the consideration is sufficient to support the contract.

4. Contracts—Evidence—Peremptory Instruction.—Where plaintiff leases a coal mine from the company of which defendant is president, and defendant in consideration of a commission of five cents per ton for selling the coal, agrees to make the weekly pay rolls for plaintiff, defendant is not entitled to a peremptory instruction on the ground that for the first two weeks the mine was operated the pay rolls exceeded the output of the mine, in view of the evidence to the effect that the mine had to be cleaned up and put in proper condition, and it cannot be said as a matter of law that defendant gave plaintiff a reasonable opportunity to determine whether or not the coal could have been mined at a profit.

5. Contracts—Breach—Damages—Instruction.—In an action for damages for breach of a contract, instructions examined and held properly to present the law of the case.

6 Contracts—Damages—Measure.—Where plaintiff leases a mine from a company of which defendant is president, and defendant, in consideration of a commission of five cents per ton for selling the coal, agrees to make the pay rolls for plaintiff, damages by way of profit for a breach of the contract by defendant are within the reasonable contemplation of the parties, and may be recovered if not too remote or speculative to be capable of legal ascertainment.

7. Contracts—Damages.—Where plaintiff leases from a company of which defendant is president a coal mine, and defendant agrees, in consideration of a commission of five cents per ton for selling the coal, to make the weekly pay rolls for plaintiff, evidence in an action for breach of the contract examined and held sufficient

to show that plaintiff could and would have mined the coal at a profit, and to sustain a verdict in his favor.

SAM C. HARDIN for appellant.

H. J. JOHNSON and C. C. WILLIAMS for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Sometime prior to the 23d of February, 1912, plaintiff, Robert M. Jackson, Jr., entered into a contract with the Pitman Coal Company, which was afterwards reduced to writing. Under this contract he leased from the Pitman Coal Company all the coal between the Pittsburg Coal Company's line and the Pitman Coal Company's switch. Under the terms of the agreement, plaintiff was to receive 85 cents per ton, the Pitman Coal Company 5 cents per ton, the Pittsburg Coal Company 5 cents per ton, and W. A. Pugh, who as agent, was to dispose of the coal, 5 cents per ton. About the time this contract was entered into plaintiff entered into a verbal contract with W. A. Pugh, who was the president of the Pitman Coal Company. Pugh agreed "to make the weekly pay-roll" for plaintiff. In other words, he was to furnish plaintiff the money to pay his hands. Some time after this contract was entered into, Pugh refused to comply with his contract, and plaintiff was compelled to abandon the work because of insufficient funds to carry it on. He thereupon brought this action to recover damages in the sum of $1,260. A trial before a jury resulted in a verdict and judgment in his favor for $600. Defendant appeals.

The evidence shows that pursuant to the lease referred to and the oral contract with defendant, plaintiff began the work of mining. Before calling on defendant for money to pay his hands, plaintiff used some money which he had gotten from his wife, and all the money that he had. The first week that he applied to defendant for money, defendant furnished it. The second week defendant declined to furnish any money. On cross-examination it was developed that plaintiff's pay-roll for the first week as well as that for the second week exceeded the market value of the coal mined. Plaintiff claims that this was due to the fact that the mine was dirty and out of repair, and that his men, instead of being engaged in the work of mining, had to clean up the

mine. In brief, the defendant's testimony is to the effect that he did not agree to advance plaintiff any money in excess of 85 per cent of the coal mined. After defendant's refusal to make the pay rolls, plaintiff endeavored to get the money from other quarters, but was unable to do so. The evidence for plaintiff further shows the amount of coal in the mine, and that they could have mined the coal so as to make a profit of $1,000 to $1,200 under the contract. The evidence for defendant is that plaintiff was actually mining the coal at a loss at the time, and that if he continued mining the coal he would have lost money under the contract.

The petition as amended was not bad on demurrer. It set forth in detail the terms of the contract, the consideration for the defendant's agreement, to-wit: The fact that he was to receive a commission of 5 cents per ton on the sale of the coal; the violation of the agreement by defendant, the fact that plaintiff could and would have mined, under his contract, coal at a profit, and that he was damaged by defendant's breach of the contract in the sum of $1,260.

The contract relied on is not void on the ground of indefiniteness or want of consideration. Plaintiff had a valid lease for the mine in question. He alleges and proves that the contract of defendant to make the pay rolls was to continue until the coal was mined. The fact that defendant would receive 5 cents per ton for selling the coal was sufficient consideration for the contract.

Defendant was not entitled to a peremptory instruction because plaintiff's evidence showed that for the first two weeks the mine was operated the pay-rolls exceeded the value of the output. Considering the fact that the mine was out of condition, and had to be cleaned and put in proper condition, it cannot be said as a matter of law that defendant gave plaintiff a reasonable opportunity to determine whether the coal could have been mined at a profit or not. Had it been conclusively shown that the plaintiff could not have mined the coal at a profit, then, of course, defendant would have been entitled to a peremptory, for he would not have been required to keep on making the pay-rolls, and risk his money on the security of the coal, the value of which was much less than the money which he was required to furnish. The jury, however, decided that plaintiff would and could have mined the coal at a profit.

The court, in its instructions, told the jury in substance that if they believed that it was a contract between the parties, and that while plaintiff was engaged in operating the mine .defendant failed and refused to furnish plaintiff sufficient money at the end of each week to pay plaintiff's hands and miners for their labor, and further believed from the evidence that plaintiff could and would have mined all the coal from said tract of land, and that he was compelled to quit work and abandon said mine for lack of sufficient funds to pay his hands, and by reason of defendant's failure to furnish him sufficient money at the end of each week with which to do so; and further believe from the evidence that plaintiff could and would have operated said mine so that the cost of same would have been less than 85 cents per ton for all the coal taken from the mine, then the law was for the plaintiff and the jury should so find. On the other hand, the court told the jury that if they believed from the evidence that under the contract between plaintiff and defendant, defendant was to furnish the plaintiff, at the end of each week, only a sufficient amount of money to pay plaintiff 85 cents per ton for all the coal he had mined from the 3½ acres of land mentioned in the evidence, and placed in the cars for shipment during the week, then they should find for the defendant.

In another instruction the court fixed the measure of damages at the difference between 85 cents per ton and the cost of mining the coal and placing it in the railroad cars for shipment.

It will be seen that the instructions present the theory of each side, and, in our opinion, are not subject to criticism. The measure of damages is correct. This is not an ordinary case of a breach of contract to lend money. The defendant was not only interested in the mine which he had leased to plaintiff, but was himself to receive a commission of 5 cents per ton for selling and disposing of the coal. The chief inducement for plaintiff to lease the mine was the agreement on the part of defendant to furnish him the money to pay his hands at the end of each week, as they would work on cheaper terms if paid in cash. Plaintiff leased the mine to make money out of it. Defendant knew that he leased it for that purpose. Under these circumstances, we conclude that the damages by way of profits which plaintiff would have made were within the reasonable contemplation of the parties at the time of the execution of the contract. The

fundamental and cardinal principle that underlies all rules for the admeasurement of damages is that the injured party shall have compensation for that which he has directly lost by reason of the act of the other party, so far as such loss was or ought to have been in the contemplation of the parties. This includes the loss of anticipated profits where these are capable of legal ascertainment. Equitable Mortgage Co. v. Thorn (Tex.), 26 S. W., 276; Holt v. United Security L. Ins. & T. Co. (N. J.), 72 Atlantic, 301, 21 L. R. A. (N. S.), 691. In the present case the profits were not so speculative or remote as to be incapable of legal ascertainment. The price which plaintiff was to receive for the coal was fixed at 85 cents, after the payment of certain commissions and royalties. To ascertain the profits, therefore, it was only necessary to determine the cost of mining the coal and placing it on the car. There was evidence before the jury from which the cost could be determined, and we cannot say that their finding is flagrantly against the evidence.

Judgment affirmed.