## Berlin Machine Works v. Jefferson Wood Working Company.

(Decided January 23, 1917.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Contracts—Contract for Sale of Machine—When Damages Not Recoverable.—Where, by the provisions of a contract for the sale

of a machine for use by the purchaser in manufacturing goods for his customers, it is apparent that the time of delivery is not of the essence of the contract, damages resulting from loss of profits by reason of delay in the delivery of the machine at a certain time can not be said to have been in contemplation of the parties, and are, therefore, not recoverable.

2. Evidence—When Meaning of Contract Cannot be Varied.—Where there is no charge of fraud or mistake in the execution of a contract, its terms or meaning cannot be varied by other evidence.

3. Contracts—Failure of Delivery—Breach.—There can be no breach of a contract to deliver within a certain period, where failure to make the delivery within the time specified is expressly waived by the terms of the contract itself.

LAWRENCE S. LEOPOLD for appellant.

JOHN J. DAVIS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SETTLE—Reversing on original and affirming on cross appeal.

The appellant, Berlin Machine Works, a corporation engaged in the manufacturing and sale of woodworking machines in Beloit, Wisconsin, on September 16, 1912, sold to the appellee, Jefferson Wood Working Company, a corporation engaged in the manufacture and sale of wood products in Louisville, Kentucky, "subject to strikes, accidents and other manufacturing contingencies," to be delivered in good order, the following machinery, "delivered f. o. b. car Beloit, Wisconsin, about four months, one No. 87 seven-inch hardwood matcher with table slide attachment equipped with six knife round heads for top, bottom and side heads, also required heads for attachment necessary for making upper and lower dove tail out at one operation at rate of 100 lineal feet per minute in a clean, accurate and satisfactory workmanship manner. This machine is further equipped with hopper feed capable of supplying 18-inch to 42-inch stock at required speed to maintain feed." The contract of sale was reduced to writing on October 4, 1912, and signed by the parties respectively, but its great length forbids its insertion in the opinion. It contains, among others, the following provisions:

"When machine is ready to test, we (meaning appellee) are to send our man to Beloit with sufficient material to test, and we are to accept or reject machine at your (appellant's) factory. It is expressly under-

stood that no guaranty is made us on this machine. If we accept machine at your factory, we assume all responsibility for its action thereafter."

For the above machine and appurtenances appellee agreed, as stated in the contract, to pay, six months after date of shipment, the sum of $3,750.00, as follows: $500.00 cash on shipment; for the remainder appellee was to execute its six promissory notes, due respectively in one, two, three, four, five, and six months from August 4, 1913, the first five of which notes were to be for $641.00 each, and the sixth and last for $541.70, all to bear interest from August 4, 1913, at the rate of 6% per annum.

It appears from the averments of the petition, and is not denied by appellee, that the machine and appurtenances were ready for delivery to defendant at Beloit the latter part of July, 1913. Appellee, pursuant to the above mentioned requirement of the contract, sent its agent to Beloit to inspect the machine and to accept or reject the same; and after full inspection thereof the agent, on the 9th day of August, 1913, duly accepted the machine and appurtenances for and on behalf of the appellee, declaring it to be fully satisfactory in every detail, and requested of appellant its earliest possible shipment to appellee at Louisville. Shortly thereafter it was shipped by appellant and received by appellee, immediately following which the latter paid the consideration of $500.00 in cash, and executed its notes, as previously stated, for the remainder. The three notes due in one, two and three months after date respectively were paid by appellee at their maturity; but it having failed to pay those due in four, five and six months, respectively, upon maturity, or at all, appellant brought suit against appellee thereon in the court below, and also upon an account amounting to $399.13 for material and supplies sold and delivered appellee by appellant.

The contract evidencing the sale of the machine and appurtenances described also contains the following provisions:

"It is agreed that title to the property mentioned herein and all subsequent additions thereof shall remain in the Berlin Machine Works (the consignor) until fully paid for in cash; that in case of rejection of the property or failure to pay as stated herein undersigned (the

purchaser) shall at once return and deliver the property in good order to consignor f. o. b. cars at Beloit, Wisconsin; that a retention of the property forwarded after thirty days from date of shipment shall constitute a trial and acceptance, being a conclusive admission of the truth of all representations made by the consignor and void all of its contracts of warranty, express or implied. It is also agreed that in case of failure to pay any installment as herein provided, the whole unpaid balance shall at once become due and payable, and consignor or its agent shall have the right, with or without legal process, to retake possession of the said property and, at its option, either retain the same (all payments made theretofore to be forfeited as compensation for its use and as liquidated damages) or sell it at public auction or private sale; that the entire expense and cost of such retake, return and resale and the deficiency, if any there be after net proceeds are applied, shall at once be paid by the undersigned. It is agreed that this contract is not modified or added to by any agreement not expressly stated herein; *that delivery at any specific time is waived.* It is further agreed that the undersigned shall, at his own expense, keep the property fully insured against loss or damage in the name and for the benefit of the consignor in the amount of the unpaid purchase price."

It appears from the averments of the petition that the appellant, instead of attempting, as contemplated by the above provisions of the contract, to retake the machine and appurtenances, asserted a lien thereon, which, by the prayer of the petition, was asked to be enforced by the sale of the property and the application of the proceeds to the three unpaid notes sued on. A personal judgment was also asked against appellee for the amount of the three notes and the account.

There is no controversy as to the account, appellee conceding its indebtedness therefor.

By its answer, which was made a counter-claim against appellant, appellee admits that it made with it the contract set forth in the writing of October 4, 1912; that the machine therein described was a special make of machine of the particular character desired by appellee and required for its business, which could not be procured elsewhere; that by the use of this machine it could increase the output of its factory without any in-

crease in the cost thereof, and produce a greater number of table slides, a commodity of which it was a large manufacturer, than it had been wont to produce without the use of such machine.

It is also alleged in the answer and counter-claim that appellee was induced to purchase the machine by the representations of appellant and its promise that it would be completed and ready for delivery to it in about or not later than four months from and after October 4, 1912; and that on the faith of this representation, without which it would not have entered into the contract, it, immediately following its purchase of the machine, entered into contracts for the manufacture and delivery to various purchasers of largely increased quantities of table slides to be delivered in car-load lots, such deliveries to begin not later than four months after the date of its contract with appellant; and that its ability to carry out these contracts depended upon the delivery to it by appellant of the machine within the four months specified by its contract with appellant; and that appellant, at the time of making the contract with appellee, was informed of its purpose to make the several contracts referred to with its customers for such sales of table slides.

It is further alleged in the answer and counter-claim that the appellant violated its contract by failing to deliver the machine in the four months' time agreed for its delivery, and did not in fact deliver it until the 9th day of August, 1913, more than six months after the time of its delivery fixed by the contract; that by reason of such failure appellee was unable to begin, at the end of four months from the date of the contract for the machine, the increased manufacture and shipment of table slides in fulfillment of its several contracts made with its customers, which caused it the following items of loss and damage: That it sustained a loss of $319.16, excess in freight charges, in being compelled, on account of appellant's delay in delivering the machine, to ship table slides in less than car-load lots at local freight rates, instead of the lower rates at which they could have been shipped by car-load lots; that for a like reason appellee was put to an additional expense of $1,525.42 in being compelled to employ additional labor in manufacturing table slides to carry out contracts with its customers; also compelled to cancel

various orders it had accepted from its customers for table slides, upon which it would have made a net profit of $1,409.00; also to incur additional expense, amounting to $316.17, by way of cost in crating numerous shipments of table slides, which crating would not have been necessary if the table slides could have been shipped in car-loads; also to incur an additional expense of $150.00 in sending, the second time, an agent to Beloit, Wisconsin, to inspect the machine. For these several items of damage, aggregating $3,403.58, appellee asked judgment against appellant on its counter-claim.

On the hearing the chancellor gave appellant a personal judgment against appellee for $1,625.02, the amount of the three notes sued on, with interest from August 4, 1913, and the further sum of $399.13, the amount of the account sued on, with interest from November 15, 1913. The judgment allowed appellee $1,472.90, with interest from August 1, 1913, on its counter-claim, to be credited on the notes due appellant; and for the balance thus found in favor of the latter on the notes, the judgment enforced the lien asserted against the machine and appurtenances, and directed the property to be sold by the master commissioner in satisfaction thereof. Appellant complains of that judgment, and has appealed; and appellee has been granted a cross-appeal.

It is apparent from what has thus far been said that the contract between appellant and appellee for the manufacture of the machine, gave the vendee the arbitrary right to accept or reject the machine when or after it was ready for delivery, specified that its manufacture was subject to manufacturing contingencies, and that delivery at any specified time was waived. So, taken as a whole, the instrument shows on its face that time was not of the essence of the contract and that the parties knew it was highly probable that a machine satisfactory to the vendee could not be made at all, even though the contract provided that it was to be delivered in "about four months." It is to be observed that the machine actually made and delivered was in many respects a different machine from that described in the contract. The answer admits the perfect work of the machine and that it was free from defects. In fact, it was a special machine made in accordance with the specifications furnished by appellee. Its only complaint is as to the delay in the delivery of the machine.

In our view of the law appellee cannot complain of such delay, because the contract of purchase gave it the arbitrary right to reject the machine after it was made, and, besides, contains an express stipulation that delivery of the machine at any specific time *"is waived."* The answer does not allege any fraud or mistake in the contract or in reducing it to writing, hence appellee is bound by its terms, and the waiver it contains as to the time of delivery is as much a part of the instrument as any other provision it contains. In our view of these conditions, damages resulting from loss of profits by appellee in its business by reason of delay in the delivery of the machine at a certain time, cannot be said to have been in contemplation of the parties, and are, therefore, not recoverable. The doctrine announced in Hadley v. Baxendale, 9 Excheq. 341; Pulaski Stave Co. v. Miller's Creek Lumber Co., 138 Ky. 372; American Bridge Co. v. Glenmore Distilleries Co., 32 R. 873; Feland v. Berry, 130 Ky. 328, and Pugh v. Jackson, 154 Ky. 649, and relied on by appellee, does not sustain its right to the damages asserted by its counter-claim.

Nor are we able to see that there is any conflict, as claimed by appellee, between the written and printed parts of the contract; therefore, no reason is shown for applying the rule announced by several of the authorities cited by it to the effect that where there is found to be any conflict between the written and printed parts of a contract, the written part must control.

It is not to be overlooked that the contract contains a provision to the effect that when the machine was ready to test, appellee was to send a representative to Beloit to make the test, with power upon doing so to accept or reject the machine; and if accepted by such agent, all responsibility thereafter was to be assumed by appellee. In point of fact, notwithstanding the stipulation in the contract that the machine was to be delivered in "about four months," the final inspection and acceptance of it by appellee's agent was not made until August 4th, which was six months after the expiration of the four months named as the time of delivery by the contract. The failure of appellee to then complain of the delay in the delivery of the machine, and also its subsequent payment of a part of the consideration and execution of notes for the balance upon the delivery of the machine, without making complaint of the delay or

informing appellant that it would sustain loss by reason of the delay, would seem to indicate that the defense interposed on that ground by its answer is an afterthought.

At any rate, whether so or not, we think the waiver as to the delivery of the machine at any specific time, contained in the contract, must control; and in the absence of an allegation charging fraud or mistake in the execution of the contract, its terms or meaning cannot be varied by the proof introduced by appellee, whether contained in the testimony of its witnesses or in some of the letters found in the record.

If, as claimed by appellee, and much of its evidence conduced to prove, it, within four months succeeding the date of the contract with appellant, accepted orders for sales and deliveries of the products of its factory in contemplation of the use of the machine purchased of appellant in filling them, it did so with the knowledge of the existing delay in the delivery of the machine; also with knowledge of the probability that it would not be constructed at all, and in the face of the provision of the contract waiving its delivery at any specific time. The case we here have is not one that authorized the recovery of damages by appellee. The damages demanded are not such as arise in the natural course of things from the breach itself, or such as may reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of the breach. Elizabethtown, &c. R. Co. v. Pottenger, 10 Bush. 185; J. S. Minor & Co. v. Paragon Plaster Co., 124 S. W. 268; Chicago City R. Co. v. Henry, 62 Ill. 142; Fox v. Poor Ridge, &c., Turnpike Co., 8 R. 427; Blood v. Herring, 22 R. 1725.

Here the primary difficulty in the way of appellee's recovery of the damages claimed is that there was no breach of the contract by the appellant. What under other circumstances might have constituted a breach of the contract, by the terms of the contract was expressly waived and condoned by appellee in advance.

For the reasons indicated the judgment is reversed on the original appeal and affirmed on the cross-appeal, and cause remanded, with directions to the lower court to set aside so much of the judgment as awards appellee damages, and dismiss its counter-claim.