[Sac. No. 4318. In Bank.—July 31, 1930.]

A. P. HUNT et al., Respondents, v. UNITED BANK & TRUST COMPANY OF CALIFORNIA (a Corporation), Appellant.

Guy R. Kennedy and Butler, Van Dyke, Desmond & Harris for Appellant.

Francis C. Brown, Wm. J. Cullinan and Seth Millington for Respondents.

TYLER, J., *pro tem.*—Action for damages for breach of contract.

The complaint counts upon an agreement entered into between the parties relating to the farming of certain lands owned by plaintiffs. The instrument is of some length and is pleaded *in haec verba* in the complaint. Prior to the time of its execution plaintiffs had been the owners of an undivided one-half interest in three parcels of real property near Oroville, California. Parcel 1 consisted of 320 acres, and was known as the "Adobe Ranch"; parcel 2 consisted of 157 acres, known as the "Home Place," and parcel 3 consisted of about 135 acres, known as the "Upper Place." In addition, they held a lease upon the other half interest in the several parcels. All the property was subject to a deed of trust which had been executed in December, 1922, to the defendant bank to secure a loan of approximately $45,000. In the year 1924, in addition to this funded indebtedness, liens for irrigation water for the years 1922 and 1923, amounting to approximately $5,400, existed against a part of the property. The defendant bank also held unsecured notes from plaintiffs, aggregating about $5,200. As an offset to these amounts the bank held an assignment from the plaintiffs of a judgment, upon which it subsequently collected for over $1600. At this time negotiations were entered into between the parties concerning this indebtedness, which resulted in the execution of several instruments. A promissory note for $14,132.54 was executed by plaintiffs in favor of defendant bank. This note, among other things, took up the $5,400 water liens and the $5,241.43 miscellaneous notes above referred to. In

addition thereto it included the sum of $2,500 for water charges which it was estimated would be incurred by plaintiffs in the coming cropping season of 1924, and the further sum of $1,000, which defendant bank undertook to advance to plaintiffs to help finance the seeding and planting of the Home Place in the cropping season of 1924. There was also executed by plaintiffs a chattel mortgage as security for the payment of the note. This mortgage covered all of plaintiffs' farming equipment and other articles. A written contract was also executed by the parties which forms the basis of the present controversy. The object of the agreement was to provide a method by which plaintiffs might reduce their indebtedness to the bank. Briefly summarized the contract recites the interest of plaintiffs in the lands above referred to, and then proceeds to enumerate the different amounts of plaintiffs' indebtedness, and the execution by them of the note for $14,132.54 to cover such sums, which, as above indicated, included the sum of $2,500 to be advanced for water charges for the current year and the further sum of $1,000 for furnishing seed for planting, and other charges. The contract then proceeds to recite the inability of plaintiffs to farm their lands without financial assistance and their desire that defendant bank assist them to procure a crop and harvest the same in order to enable them to meet their obligations to the bank. It further recites the willingness of the bank to defer foreclosure of its deed of trust. After these recitals the contract proceeds in effect as follows: "Now, therefore, in consideration of the premises and of the promises on the part of the parties of the first part . . . it is between the parties agreed that plaintiffs consent to lease to one Bayless parcel 1 of the real property described in the agreement. (2) That plaintiffs agree to farm and to plant such crops as may be expected to yield the best in production in the current year on the Home Place and that all sums of money netted to plaintiffs from the products raised be paid to the bank, and plaintiffs agree to provide on their own account and without assistance of the bank, all financial aid to enable them to farm Parcel No. 2 for the current year." The agreement further provides that the bank will protect plaintiffs against the foreclosure of any liens for the use of water for the current

year, as well as for any water previously used thereon and unpaid for.

After the entering into of this contract plaintiffs commenced farming operations on the Home Place which they had undertaken to carry on. They prepared the ground, had it surveyed for the erection of contours, diked it, built irrigation ditches, put in rice boxes to regulate the flow of water from one check to another, and had it ready for the water and seeding. They purchased seed rice amounting to the sum of $535 to plant on the property and gave a written order on the bank to the seller thereof in payment of the purchase price. This sum was paid by the bank out of the $1,000 which the bank had agreed to advance. Plaintiff A. P. Hunt subsequently wrote to the bank inclosing statements showing the amount of wages due to workmen who had assisted in preparing the land for seeding. He requested checks in the sum of $249.20 to cover the amount of these wages. Immediately thereafter one Jarvis, a field agent of the bank, called on plaintiffs with a blank application for them to sign to obtain water from an irrigation system. Hunt signed it and returned it to Jarvis. Jarvis thereupon informed Hunt that he had the men's pay checks and also a check for the first installment due to obtain the irrigation water which he would take to the irrigation company and pay. Jarvis then requested that Hunt sign a lease to one Roberts of the Adobe Ranch. Hunt refused on the ground that he had already signed one to Bayless in accordance with the terms of the contract, and for the further reason that Roberts was a highly undesirable tenant and a Hindu agent. Upon Hunt's refusal to accede to this demand, Jarvis left, taking the checks he had brought with him for the men's wages and the water. The bank thereupon informed Hunt that unless he agreed to lease the Adobe Ranch to Roberts that it was through with the entire transaction. The lease not being signed, the bank subsequently refused to go on with the contract. The workmen not having received their wages brought suit against Hunt for the same. They obtained judgment and sold the seed rice under execution. The bank purchased the same and resold it at a profit. The result was that the Home Place was not farmed during the 1924 season and Hunt lost his rice crop. Defendant then caused the lands to be sold

under its deed of trust. Plaintiffs thereupon brought this action to recover damages in the sum of $20,000 from defendant by reason of the loss of the crop. A demurrer was interposed to the complaint, which was overruled, and defendant answered. By its answer it admitted the making of the contract but denied its breach. The answer contained a counterclaim, which set forth the execution of the note above referred to, in the sum of $14,378.37. Upon these pleadings the case was tried and the issues submitted to a jury, which rendered two verdicts, finding (1) for plaintiffs on their complaint in the sum of $14,375; (2) that the defendant, on its counterclaim, was entitled to nothing. Judgment to the same effect was entered. Defendant moved for judgment notwithstanding the verdict. The court thereafter ordered the motion denied as to the verdict on the plaintiffs' complaint, and granted as to the verdict on defendant's counterclaim, that it take nothing, and judgment was entered upon the counterclaim in the sum of $14,378.50, with interest amounting in all to the sum of $18,700. Plaintiffs appeal from the judgment for defendant on its counterclaim. Defendant appeals from the judgment for plaintiffs on their complaint.

For clarity, the plaintiffs, respondents and appellants, will be hereafter referred to as plaintiffs, and the bank, defendant and appellant, as the bank.

Defendant, in support of its appeal, claims that the court erred in overruling its demurrer. It is its contention that the complaint failed to state a cause of action, because the contract pleaded imposed no duties upon the defendant and laid no obligation upon it to do the things which the complaint alleged it had failed to do. The particular breaches complained of were two—first, the breach of the obligation to advance money for the payment of water charges on the Home Place; and, second, the breach of the obligation to advance the sum of $1,000 for the purchase of seed and other expenses in planting the same. It is claimed by defendant that nowhere in the contract can be found warrant or authority for the contention that these obligations were assumed by it. This argument is based upon the premise that the alleged covenants on the part of the defendant are but mere recitals or preambles prefixed to the agreement and have therefore no binding or obligatory

force. There is no merit in the contention. ■ Recitals or preambles prefixed to an agreement may or may not have binding force. If they form part of the operative covenants of the instrument in such a way as to show it was designed and intended that they should form part of it, they will be so construed. ■ It is a primary rule of interpretation that contracts must be construed as a whole that is, from their four corners, and the intention of the parties is to be collected from the entire instrument and not detached portions thereof, it being necessary to consider all of the parts to determine the meaning of any particular part as well as of the whole. Individual clauses and particular words must be considered in connection with the rest of the agreement, and all of the writing and every word of it will, if possible, be given effect. (13 Corpus Juris, 525.) ■ The essential feature of a contract is the promise, and whenever the court can collect from the instrument or engagement on the one side to do or not to do a certain thing, it amounts to a covenant, whether it be contained in the recital or in any other part of the instrument. ■ While general or limited terms may be restrained by particular recitals, each contract, of necessity, must be construed according to its meaning, and no rigid rules of construction can be applied that will do violence to the intention of the parties. The problem is not what the separate parts of the contract may mean, but rather what the contract means as a whole. The separate parts have little weight when compared with the contract in its entirety. ■ Here the manifest intention of the parties as gathered from the entire instrument shows that the bank was to advance the sum of $3,500 for water and farming expenses in order to enable plaintiffs to farm the land, and this very sum was included in their note for the security of which they had hypothecated all of the property they possessed. The contract clearly and definitely shows that these recitals were intended to have obligatory force, imposing upon plaintiffs certain obligations, for it definitely recites that the bank is willing to assist plaintiffs in the amount indicated in the contract, which recital has reference to the water charges and the cost of seeding and planting to the extent stipulated. The execution by plaintiffs of the note having included the amount of these advances, to hold that the

recitals occurring in the first portion of the contract are mere matters of inducement and not obligatory would be to relieve defendant bank from all obligations thereunder and defeat the very purpose of the agreement. The contract was prepared by defendant bank. ■ One who prepares a contract can by exactness of expression more readily prevent mistakes in meaning than one with whom he is dealing. Doubts arising from ambiguity of language are therefore resolved in favor of the latter. This rule finds frequent application to policies of insurance · which are ordinarily prepared solely by the insurance companies, and such contracts, when doubtful, are construed most strongly against the companies, and this regardless of whether the words used are recitals or otherwise.

As above stated, whenever the court can collect from the instrument an engagement on the one side to do or not to do a certain thing, it amounts to a covenant, whether it be in the recitative or in any other part of the instrument. Then, again, this is the practical construction given to the contract by the parties themselves. The trial proceeded on the theory that defendant was obligated to furnish the amounts as contended for by plaintiffs, defendant's defense being merely that certain advancements had been made which exhausted the credit.

■ We think we have sufficiently discussed this branch of the case. Defendant next complains that the court improperly instructed the jury upon the measure of damages. The court instructed the jury, in effect, that the profit which plaintiffs would have derived from the crop to be planted on parcel No. 2 was the measure of damages. It is conceded by defendant that in certain instances the loss of prospective profits does constitute the proper measure of damages, but it claims that when the obligation is to advance or pay money only, this rule of damages does not apply. The instruction was a proper one. (Sec. 3300, Civ. Code.) The money that defendant agreed to advance was for farming purposes, from which the parties contemplated a profit would result. Plaintiffs required both water and seed and funds to plant the same. They had transferred everything they possessed to defendant as security to insure defendant from loss by reason of its obligation. The evidence showed that they had properly prepared the land for

seeding. The season for the year 1924, as shown by experts, was an excellent one for rice growing. Because of its unjustified act in refusing to advance the money which defendant had obligated itself to do, plaintiffs were in no position to acquire the necessary funds, for they were at the end of their financial resources. No question is here raised as to the amount of damages plaintiffs suffered. They sued for the sum of $20,000, and the evidence shows that the crop, if planted, would have netted at least that amount. Under these circumstances it was clearly within the contemplation of the parties that profits would be derived from the venture which could only be acquired from a fulfillment of defendant's obligation. The loss of the prospective profits was the natural and direct consequence of the breach, plaintiffs being in no financial position to borrow elsewhere, they having been stripped of all control of their property by defendant bank to secure it for the very advances it had obligated itself to furnish. The rule of damages in such a case is clearly lost profits, and does not involve the ordinary case of breach of contract to lend money. (*Parkinson* v. *Langdon*, 36 Cal. App. 80 [171 Pac. 710] ; *National Bank* v. *Pitman Roller Mill*, (Tex. Com. App.) [36 A. L. R. 1405 265 S. W. 1024] ; *Pugh* v. *Jackson*, 154 Ky. 649 [157 S. W. 1082].) Defendant further claims that the court erred in denying its motion for a directed verdict in its favor on the issues raised by the complaint and answer, as the evidence did not show a breach of any contractual obligation under the contract. ■ Unless it can be said that, as a matter of law, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that an appellate court would be impelled to reverse it upon appeal or a trial court set it aside, a court is not justified in taking a case from a jury and itself rendering the decision. (*Umsted* v. *Scofield Eng. Co.*, 203 Cal. 224 [263 Pac. 799].) ■ Such a motion is in the nature of a demurrer to the evidence, and is governed by practically the same rules, and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. (*Butler-Veitch, Inc.*, v. *Barnard*, 77 Cal. App. 709 [247 Pac. 597].) Even though a court might be justified in granting a new trial it would not be justified in directing a verdict on

the same evidence. (*Estate of Caspar*, 172 Cal. 147 [155 Pac. 631].) The power of a court in passing upon such motions is strictly limited. It has no power to weigh the evidence, but is bound to view it in the most favorable light in support of the verdict. The right of a court to direct a verdict is the same as the right of a court to grant a nonsuit. This can be done only when, disregarding conflicting evidence and giving plaintiffs' evidence all the value to which it is legally entitled, including every legitimate inference which may be drawn therefrom, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict was given. (*Newson* v. *Hawley*, 205 Cal. 188 [270 Pac. 364].) If, in the opinion of the court, the evidence is unreliable, it is its duty to grant a new trial, and it may grant such trial even where there is substantial evidence to sustain the verdict, if it believes that the evidence preponderates against the verdict. In support of its claim that there is no evidence that defendant breached its contract by failing to make plaintiffs the proper advancements under the contract, it is asserted that the evidence shows that it did advance to them a sum in excess of $900, and the further demand by plaintiffs of the sum of $249 for wages was in excess of that to which they were entitled, and was, therefore, properly refused.

Upon this subject there was a substantial conflict in the evidence. While it appeared from testimony produced by defendant that all but $98.94 of the fund was advanced by defendant to plaintiffs, it also appeared that at the time the demand for the amount due as wages was made there was a remaining balance of $305.28, which was more than sufficient for its payment, and that this amount was subsequently reduced by improper charges made against the fund, which had no relation to the contract, but which arose upon an entirely independent agreement by which Hunt was employed by the bank to farm certain of its lands. It further appeared that the bank was prepared to pay the claim at the time it was made, and its sole reason for failure to do so. was the refusal of Hunt to sign the lease that defendant demanded. These facts authorized one of two opposite conclusions, which was a matter for the jury to determine, and its verdict is conclusive upon the subject in

the same manner as in the case of contradictory evidence. (*MacDermot* v. *Hayes,* 175 Cal. 95 [170 Pac. 616].) The motion for a directed verdict was properly denied.

█ We will now consider the questions raised on plaintiffs' appeal. As above indicated, judgment was entered pursuant to the verdict of the jury to the effect that plaintiffs recover the sum of $14,375 from the defendant on their complaint, and that defendant take nothing on its counterclaim. Thereafter the court granted the motion of defendant for judgment notwithstanding the verdict that it take nothing upon its counterclaim, and directed a judgment in favor of defendant upon such counterclaim and against the plaintiffs in the sum of $14,378.37, together with interest, amounting to approximately $18,700. Plaintiffs have appealed from this judgment, which was based upon an alleged deficiency due after foreclosure of the deed of trust on plaintiffs' property. One of the grounds of assigned error is that the verdict of the jury that defendant recover nothing on its counterclaim was fully supported by the evidence, and, this being so, the court had no power to set aside the verdict and direct a judgment. Plaintiffs are correct in this contention. The testimony of plaintiff A. P. Hunt alone establishes a complete recoupment of any amount proved by defendant on its counterclaim. He testified that he had turned over to defendant his entire crops for certain years, amounting to a large sum of money, together with the proceeds from the sale of hogs, turkeys and corn, and also the proceeds of a fire insurance policy, amounting to the sum of $3,000 on his home, which had been destroyed by fire, for all of which he had received no credit. These amounts thus relinquished to defendant more than offset the greatest amount that defendant established on its counterclaim. It is claimed that the evidence of Hunt is inherently incredible. We do not so consider it. It was either true or false. If defendant had reason to believe the testimony to be untrue it had ample opportunity to disprove it. During the course of the trial, on two different occasions, plaintiffs demanded that defendant produce its records or testimony showing the disposition of these credits. These demands were never complied with. The verdict of the jury shows that it accepted Hunt's testimony as true, and such testimony fully supports the verdict that defendant take nothing. Plain-

tiffs claim that, in addition to the conflict, defendant utterly failed to prove certain items of its claim. While we are of the opinion there is merit in this contention, we do not deem a discussion of this evidence to be necessary further than to say that the offset proved by plaintiffs amounted to more than the greatest amount that defendant established on its counterclaim. It is suggested by defendant that it would be unjust to reverse the order granting judgment on the counterclaim notwithstanding verdict and direct entry of judgment that defendant take nothing on its counterclaim without a retrial of the issues upon the counterclaim, as the court would undoubtedly have granted a new trial as to those issues had it not granted the motion for judgment notwithstanding the verdict. This may be true from defendant's point of view, but plaintiffs are also complaining of being deprived of the fruits of their verdict in the face of the evidence supporting their claims, by the action of the trial court in directing a judgment. However this may be, we fail to see how defendant can obtain relief from the position it finds itself placed as a result of its own acts. It moved for a directed verdict in its favor; that being denied, it subsequently moved for judgment notwithstanding verdict. It also gave notice of intention to move for a new trial before the court had determined the motion for judgment notwithstanding the verdict. The court had no power, under section 629 of the Code of Civil Procedure, to grant the motion it did, by reason of the conflict in the evidence. The power of the court to grant a motion for judgment notwithstanding the verdict is no broader than its power to direct a verdict, a matter hereinabove discussed. The only relief that defendant could obtain from the result of the verdict and judgment against it was by a new trial, which the court may have granted notwithstanding the conflict in the evidence, but which it failed to do. Supplementing what we have said concerning the supervisory power of a court to render judgment *non obstante .veredicto,* it is the established law that such a motion cannot be granted where there is a conflict in the evidence, although the conflict is such that the trial court is justified in granting a new trial notwithstanding it, as the motion must be based upon such a state of facts as will warrant the court in granting it without trespassing on

the province of the jury to be judges of all questions of. fact in the case. (15 R. C. L. 607.) To hold otherwise would result in the abridgement of the constitutional right to a jury trial. A new trial on the counterclaim having been denied, the verdict thereon must stand, and we have no power to disturb it. Plaintiffs raise the further objection that the record shows that defendant failed to ask for a directed verdict on its counterclaim, its motion being addressed solely to the issues raised under the complaint and answer, for which reason the court had no power, under section 629 of the Code of Civil Procedure, to grant the motion. (Citing *Cushman* v. *Cliff House*, 79 Cal. App. 572 [250 Pac. 575].) Considering the conclusion we have reached, a discussion of this question becomes unnecessary. From what we have said it follows that the judgment entered in plaintiffs' favor upon its complaint should be affirmed and the judgment entered in defendant's favor, pursuant to the action of the court in granting defendant's motion for a judgment notwithstanding the jury's verdict, upon its counterclaim, should be reversed and judgment in plaintiffs' favor be directed upon the counterclaim without further proceedings in the trial court. It is so ordered.

Shenk, J., Waste, C. J., Richards, J., Curtis, J., and Seawell, J., concurred.

Rehearing denied.