[Civ. No. 12423. Second Dist., Div. One.—May 19, 1941.]

RICHARD VAN RENNES et al., Appellants, v. SOUTHERN COUNTIES GAS COMPANY OF CALIFORNIA (a Corporation), Respondent.

Frank Desimone for Appellants.

LeRoy M. Edwards and O. C. Sattinger for Respondent.

YORK, P. J.—Plaintiffs appeal from a judgment which was rendered against them pursuant to section 629 of the Code of Civil Procedure notwithstanding the verdict of the jury which was previously returned against the defendant, Southern Counties Gas Company of California, for its alleged negligent maintenance of a cement meter box.

The action arises out of injuries sustained by appellant Katie Van Rennes when she fell over the said meter box while walking along a dirt pathway or sidewalk running north and south between 11th and Melrose Streets on the east side of Grand Avenue in Buena Park, California, under the following circumstances:

On the day of the accident, May 20, 1938, Mrs. Van Rennes left the home of her employer, Dr. Counter, and walked east on Melrose Street to Grand Avenue; thence north using a cement sidewalk on the west side of Grand Avenue for about half a block. She then crossed the street in a marked crosswalk and was proceeding northerly on the east side thereof on her way to her home, which was located slightly east of said Grand Avenue on the north side of 11th Street, which latter street intersected Grand Avenue less than half a block north of the said marked crosswalk. The pathway upon which said appellant was walking at the time she fell was located approximately two feet from the curb line, was irregular in width and was fringed with weeds and grass. The concrete meter box of respondent was approximately 2 feet by 30 inches in size, and was situated directly in the said pathway in front of a residence at 1120 Grand Avenue. This meter box had a split top, at one end of which was the inspection plate or reading cap, commonly referred to during the trial as the center lid. In order to read the gas meter it was necessary for the reader to remove this center lid which was done by inserting a vault hook in a hole approximately 1x¼ inches which was cast in the lid in the process of manufacturing the meter box.

It is alleged that because of the negligence of respondent in maintaining the said meter box in a state of disrepair, appellant Katie Van Rennes "tripped, fell and stumbled", sustaining a comminuted fracture involving the lateral condyle of the right humerus.

During the trial respondent moved for a nonsuit and also for an instructed verdict, which motions were denied. After the jury returned its verdict for appellants, assessing damages at $3,880 in favor of appellant Katie Van Rennes and at $1100 in favor of her husband, appellant Richard Van Rennes, respondent's motion for a judgment notwithstanding the verdict was granted. This appeal is from the judgment entered pursuant thereto, it being urged by appellants that "the principal question involved in this case is whether the evidence was sufficient to sustain the verdict of the jury."

■ The principles of law that govern the action of a trial court in passing upon a motion for judgment *non obstante veredicto* are enunciated in *Hubbert* v. *Aztec Brewing Co.*, 26 Cal. App. (2d) 664 at 682 [80 Pac. (2d) 185, 1016], as follows:

"Such a judgment is in order 'when a motion for a directed verdict, which should have been granted, has been denied, and a verdict rendered against the moving party'. (Code Civ. Proc., sec. 629.) The state of the evidence that calls for such a judgment, therefore, is the same which would have called for a directed verdict. That is to say, as stated in *Barthelmess* v. *Cavalier*, 2 Cal. App. (2d) 477, 480 [38 Pac. (2d) 484] :

" 'The rendering of a judgment notwithstanding the verdict is made by section 629 of the Code of Civil Procedure to depend upon the existence of grounds for the granting of a motion for a directed verdict. See *Estate of Fleming*, 199 Cal. 750 [251 Pac. 637] ; *Estate of Yale*, 214 Cal. 115, 124 [4 Pac. (2d) 153]. The power to direct a verdict is as stated in *Estate of Yale, supra*, "touching that state of the evidence, the same as the right of the court to grant a nonsuit at the conclusion of the evidence". And the right is to be exercised only when, after giving to the testimony of the plaintiff its full scope and indulging in all favorable and legitimate inferences from it, there is no substantial evidence to support a verdict for the plaintiff. (*Estate of Caspar*, 172 Cal. 147, 150 [155 Pac. 631] ; *Estate of Flood*, 217 Cal. 763, 768 [21 Pac. (2d) 579].) "Unless it can be said as a matter of law that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal,

or a trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury.'' (*Estate of Lances*, 216 Cal. 397, 400 [14 Pac. (2d) 768].)'

''As said in *Estate of Lances, supra,* (p. 400), quoting from *Newson* v. *Hawley,* 205 Cal. 188, 190 [270 Pac. 364]:

'' 'It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted ''only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.'' ' ''

The testimony of appellant Katie Van Rennes, with respect to the manner in which she sustained the injuries here sued upon, is briefly as follows: ''It was just after noon (on May 20, 1938), and I was going home from work and I started on Melrose Avenue and went to the east as far as Grand and I turned north, and at the safety zone I crossed the street across Grand to the east side of the street and walked in the path. I heard a horn and as I looked up I didn't see anything but down I went. . . . I got up and I looked for the cause of it and I noticed there was a ragged top in the meter. . . . To the best of my knowledge I hooked my toe in the hole of this meter box. . . . it was a jagged, quite a large hole.'' Upon cross-examination, she was asked ''Just before you heard the horn sound, do you recall where you were looking as you were walking down this pathway?'', to which she replied, ''Well, I was looking in front of me.'' Continuing: ''Q. But you didn't see the meter box at any time before the horn blew? A. No, I didn't. At the very instant I heard the horn, in looking up, I was down. Q. Just before the machine blew it, were you looking ahead of you? A. Yes, sir. Q. And you didn't see the meter box at any time before you fell? A. No, sir, I did not. . . . Q. Did you stumble over the edge of the meter box? . . . A. I stumbled in this hole. Q. That is right in the top of the box—the hole in the top of the box? A. There was a jagged edge. Q. Was it in the top of the box? A. It was in the top of the box. Q. Your foot didn't catch on the edge of the

box? A. No. Q. Or you didn't stumble before you got to the box? A. My foot was right there in that hole. Q. Did you stumble before you got to the box? A. No, sir. Q. Your foot was caught in the hole? A. The right toe. . . . I remember my toe caught in the hole and I fell on my right elbow.''

The record shows that said appellant sustained a comminuted fracture of the lateral condyle of the right humerus, the condyle referring to the enlargement of the bone above the elbow.

The witness McKenzie, a neighbor of appellants, testified he had lived in Buena Park fourteen years and was familiar with the meter box in question since January of 1938; that on that date the cap on the said meter box was broken; that "the break was approximately 3 inches one way by two and a half the other, and approximately two inches deep.'' It was brought out upon cross-examination of this witness that his testimony with respect to the condition of the meter box as it existed from January to May of 1938, was given from his independent recollection of what he had seen and that he did not need to rely upon photographs in order to testify.

The witness Duval testified that he had used the pathway in question for a period of ten years; that on May 20, 1938, he had occasion to inspect the meter box on Grand Avenue, and that the inspection plate thereon was broken and the grass around it was 8 to 10 inches high; that the lid of the meter box was broken, "cracked in two, and there was a hole about two inches . . . deep. . . . I should judge three or four inches'' wide.

Richard Van Rennes testified he inspected the meter box on May 20, 1938, and that "there was a piece out of the center lid . . . it was the north side of the south side piece . . . about 3 or 4 inches wide . . . approximately 2 inches'' deep. He also testified that substantially the same condition existed with reference to the meter box for two or three months prior to May 20, 1938.

All of these witnesses were shown enlargements of photographs of the meter box which were taken subsequent to May 20, 1938, some as late as October and December of that year, and said witnesses testified that these photographs substantially represented the condition of the meter box as it existed at the time of the accident.

Respondent corporation, in addition to the testimony of nine of its employees, presented the testimony of Mrs. Beebe, in front of whose home the meter box was located, an employee of an advertising corporation that maintained a billboard in the vicinity of the meter box, and also that of a lawyer who had observed the location while passing in his automobile. While several of the employees of respondent had no independent recollection of the meter box in question, except as they refreshed their memories from meter readers' sheets, etc., they were all certain that the meter box was in good condition within a short period of time both before and after the accident occurred. Those employees who either inspected the box or took pictures of it in June of 1938, testified they found no holes except the lifting hole cast in the lid, but it was also shown by their testimony that the center lid was replaced in January of 1939.

Mrs. Beebe testified she did not observe anything the matter with the center lid, although she saw the meter site almost every day during the year 1938. In rebuttal it was shown that Mrs. Beebe had told appellants and one Zoe Jackson that she had never had occasion to examine the meter box and knew nothing about it.

The photographs of the pathway and the photographic enlargements of the cement meter box which were introduced in evidence by both parties and marked as exhibits, are not before us, except for a few which are appended to respondent's brief. However, all of them were taken subsequent to the accident, some as late as October and December of 1938, consequently, they are of little value, particularly since they were used first by appellants and then by the respondent to show the condition of the meter box as it existed at the time of the accident, such evidence being in direct conflict.

Respondent urges that appellant Katie Van Rennes' uncontradicted testimony proves conclusively her contributory negligence which of itself justified the judgment notwithstanding the verdict.

The jury by its verdict impliedly found that appellant Katie Van Rennes was free of contributory negligence and that respondent negligently maintained the said meter box.

Applying the rules heretofore outlined to the evidence shown by the record, of which we have given a brief *résumé* herein, it is clear that the motion for judgment *non obstante*

*veredicto* was improperly granted. Because, as was said in the case of *Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108 at 120 [291 Pac. 184] : "It is the established law that such a motion cannot be granted where there is a conflict in the evidence, although the conflict is such that the trial court is justified in granting a new trial notwithstanding it, as the motion must be based upon such a state of facts as will warrant the court in granting it without trespassing on the province of the jury to be judges of all questions of fact in the case. (15 R. C. L. 607.) To hold otherwise would result in the abridgement of the constitutional right to a jury trial."

Again in *Estate of Barton*, 16 Cal. App. (2d) 246 at 248 [60 Pac. (2d) 471], the court states: "The power of a court to grant a motion for judgment notwithstanding the verdict is no broader than its power to direct a verdict and it cannot be exercised where there is a conflict in the evidence, even though the conflict is such that the trial court would be justified in granting a new trial notwithstanding it. (*Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108 [291 Pac. 184].) On the motion all evidence in conflict with the Conner claimants' evidence must be disregarded; the trial court cannot judge the credibility of the witnesses, and the Conner claimants' evidence should be given all the value to which it is legally entitled. Herein indulging in every legitimate inference which may be drawn from that evidence, the (verdict) can be set aside only if the result is a determination that there is no evidence of sufficient substantiality to support the verdict. (*Estate of Flood*, 217 Cal. 763 [21 Pac. (2d) 579].)"

Tested by this rule, we are of the opinion that in this case the trial court was in error in determining that there was no evidence which gave substantial support to the verdict reached by the jury.

The judgment notwithstanding the verdict is reversed, and the trial court is directed to render judgment in accordance with the verdict of the jury.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied June 11, 1941, and respondent's petition for a hearing by the Supreme Court was denied July 17, 1941.